WESTINGHOUSE CREDIT CORP. *v.* FIRST NAT'L BANK
OF GREEN FOREST, ET AL

5-3905                                    407 S. W. 2d 388

Opinion delivered October 31, 1966

*Warren & Bullion,* for appellant.

*Warner, Warner, Ragon & Smith* and *J. E. Simpson* and *Ted Coxey,* for appellee.

PAUL WARD, Justice. One of the two issues on this appeal is whether appellant was indebted to appellee in the amount of $10,087.18. The trial court, sitting as a jury, found, from the testimony, in favor of appellee, and this appeal follows.

In order to understand how the alleged indebtedness arose it is necessary to set out, in some detail, certain background facts.

*The parties involved.* Appellant, Westinghouse Credit Corporation (hereafter called "WCC") is a foreign corporation (authorized to do business in this State) and is a subsidiary of the Westinghouse Corporation. Appellant is engaged in helping finance appliance dealers by purchasing their retail contracts. It operates through a main office in Dallas and a district office in Little Rock with Paul Moore as manager of the latter. Appellant employs agents to solicit business from appliance dealers in the State and to assist in other ways. One of these agents is J. P. Erion, Jr.

William T. Daniels, d/b/a T. V. & Appliance Supermarket (called "Daniels") is located at Berryville, Arkansas, with a store at Rogers. He retails appliances—often on credit.

Appellee is the First National Bank of Green Forest, Arkansas (called "bank"). Its president is Ray Anderson.

*Facts.* On January 14, 1964 Daniels and Erion, Jr. drew a draft on WCC, payable to Daniels for the sum of $4,150.65. A similar draft was drawn two days later for the sum of $5,936.53. The drafts were signed as follows.

"T. V. & Appliance Super Mkt.
(dealer)
(per) William T. Daniels
(official title) Owner
J. P. Erion, Jr.
Westinghouse Credit."

Both drafts were presented to and cashed by appellee-bank, and the proceeds placed to the credit of Daniels. The face of the draft, which was printed on a large envelope, bore the following statement: "In consideration of your immediate payment of this draft, covering your purchase of the transaction represented by the papers contained herein . . . ."

When the drafts were presented by appellee to WCC payment was refused, and then appellee filed suit in circuit court against WCC and Daniels to recover the money expended. After hearing all the testimony on the issue presented the trial court (sitting as a jury) found in favor of appellee.

*One.* We have concluded that the judgment appealed from must be affirmed. It is well established by many decisions of this Court that the decision of the trial judge (as here) has the same force and effect as the verdict of a jury and must be affirmed if supported by substantial evidence.

The evidence shows that on many previous occasions similar drafts had been honored by WCC; that appellee-bank had treated them as cash items for which Daniels had been given immediate credit. There was testimony that WCC's agent had instructed the bank to treat similar drafts as cash items. This testimony was objected to by appellant on the ground that it was an attempt to "vary the terms of a written instrument." We do not agree. The testimony referred to above tended not to vary but explain the meaning of the draft. In the case of *Jackson County Gin Co.* v. *McQuistion,* 177 Ark. 60, 5 S. W. 2d 729, there appears this statement:

> "While parol evidence is not admissible to vary the terms of a written contract, it is admissible to show what the parties intended to express by the language adopted."

The rule thus stated has never been overruled. Also, there is testimony in the record from which the trial court could have found that *Erion, Jr.* was an agent of WCC clothed with authority to approve contract purchases and also drafts drawn in payment thereof.

*Two.* WCC not only filed an answer to the bank's complaint, as set out above, but it filed a counter-claim against the bank and also filed a cross-complaint against

the bank and its president—Ray Anderson. In both instances WCC alleged, in substance, that the bank and its president, "with intent to deceive and defraud," falsely and fraudulently represented that Daniels "was in good credit and safe to be trusted." It was further alleged that the bank and Anderson well knew at the time that Daniels' business was highly unsound and not in good credit—that he was not worth anything over and above his debts and liabilities, and that they knew of prior fraudulent dealings on the part of Daniels. It was further alleged that WCC relied upon said misrepresentations and, as a result thereof, it granted credit to Daniels in the sum of $256,000 (now due); that of the above amount $150,000 worth of sales contracts were fraudulently issued by Daniels, and; that Daniels is now totally insolvent.

After testimony was introduced tending to support the above allegations, appellees moved for a summary judgment which was granted by the trial court. We think this was error. The general rule, well established by many decisions of this Court, is that a motion for summary judgment will not lie where there exists a genuine issue of fact. See: *Kealy* v. *Lumbermen's Mutual Ins. Co.*, 239 Ark. 766, 394 S. W. 2d 629, and *Jones* v. *Halliburton Co.*, 240 Ark. 919, 403 S. W. 2d 51. We feel that it would serve no useful purpose to discuss at length the many authorities cited by both sides or the somewhat voluminous testimony offered in evidence. We think if suffices to say we do find in the record several genuine issues of fact which, we think should be passed on by a jury.

We are also of the opinion that if, on a trial, appellant can prove all its allegations above mentioned, then a cause of action would lie. See: *Gregory* v. *Consolidated Utilities, Inc.*, 186 Ark. 406, 53 S. W. 2d 854, and *Clay* v. *Brand*, 236 Ark. 236, 365 S. W. 2d 256.

In view of what we have heretofore said it follows

that the bank's judgment against WCC must be affirmed. Likewise, the judgment of the trial court dismissing WCC's alleged cause of action must be reversed. It is so ordered, and the latter cause is remanded for further proceedings consistent with this opinion.

It has been urged that since this is a circuit court action we must remand both causes of action for a complete new trial. We do not agree. We have the power to so divide the two causes since we are not dividing a jury verdict. See: *Martin* v. *Street Improvement District No.* 349, 180 Ark. 298, 21 S. W. 2d 430; *Manzo* v. *Boulet*, 220 Ark. 106, 246 S. W. 2d 126, and; *Callaway* v. *Cherry*, 229 Ark. 297, 314 S. W. 2d 506.