WILLSON SAFETY PRODUCTS *v.* Alex
ESCHENBRENNER

89-337                                    788 S.W.2d 729

Supreme Court of Arkansas
Opinion delivered May 7, 1990
[Rehearing denied June 11, 1990.]

*Wright, Lindsey & Jennings*, for appellant.

*Gibson & Hashem*, by: *Hani W. Hashem*, for appellee.

OTIS H. TURNER, Justice. The appellee, Alex Eschenbrenner, while operating a drill machine at the White Rogers manufacturing plant in Batesville, suffered a ruptured eardrum and displaced meniscus of the tempromandibular jaw joint (TMJ). While operating the machine, the appellee was wearing a pair of Willson hearing-protectors, resembling headphones, when a co-worker pulled one of the protectors away from the appellee's head and released it, allowing the earcup to snap sharply against the appellee's ear and face.

The appellee filed a products liability action against the appellant, Willson Safety Products, alleging that the design of the hearing-protectors was a proximate cause of his injury and resulting medical problems. The appellee contended that the defective design of the protectors permitted the earcups to rotate 360 degrees on the horizontal axis, thus allowing the hard plastic portion of the cups to come in contact with the appellee's ear and face.

The issues concerning the design of the product, the facts of the incident, and the causal relationship of the appellant's product to the injury were thoroughly developed and contested. The jury returned a verdict for the appellee in the amount of $590,513. We affirm that judgment.

For reversal the appellant argues:

I. There was no substantial evidence that the hearing-protectors were negligently designed or unreasonably dangerous;

II. There was no substantial evidence that the earcup of the hearing-protector rotated before striking the appellee;

III. The misuse of the hearing protector by the appellee's co-worker constituted an independent and intervening cause of the injury as a matter of law;

IV. The future medical expenses were based solely on speculation and conjecture.

Points, I, II, and III are clearly challenges to the sufficiency of the evidence. The record reflects that at the close of the appellee's case-in-chief, the appellant moved for a directed verdict, alleging that there was insufficient evidence to submit the issues to the jury. No further motion attacking the issue of sufficiency of the evidence was made until after the jury verdict. Subsequently the appellant moved for judgment notwithstanding the verdict (N.O.V.).

Arkansas Rules of Civil Procedure Rule 50 provides:

(a) *Motion for Directed Verdict or Dismissal When Made; Effect.* A party may move for a directed verdict at the close of the evidence offered by an opponent . . . . A party may also move for a directed verdict at the close of all of the evidence. . . . a motion for a directed verdict shall state the specific grounds therefor. . . .

(b) *Motion for Judgment Notwithstanding the Verdict.* WHENEVER A MOTION FOR A DIRECTED VERDICT *MADE AT THE CLOSE OF ALL THE EVIDENCE* is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury *SUBJECT TO A LATER DETERMINATION OF THE*

*LEGAL QUESTIONS RAISED BY THE MOTION.*
Not more than 10 days after entry of judgment, a party
who has moved for a directed verdict may move to have the
verdict and any judgment entered thereon set aside and to
have judgment entered in accordance with his motion for a
directed verdict . . . . (Emphasis added). . .

(e) *Failure to Question the Sufficiency of the Evidence.* When there has been a trial by jury, the failure of a
party to move for a directed verdict at the conclusion of all
the evidence, or to move for judgment notwithstanding the
verdict, because of insufficiency of the evidence will
constitute a waiver of any question pertaining to the
sufficiency of the evidence to support the jury verdict.

Subsection (a) of this rule is the grant of authority by which
a party may challenge the sufficiency of the evidence, as a matter
of law, prior to a submission of the factual issues to the jury.
Subsection (b) is the grant of authority and procedure by which a
party may, *after verdict,* submit to the court for its determination
"the legal questions raised by the motion" — the motion being the
motion for directed verdict made "at the close of all the evidence"
as provided in the preceding phrase of that same sentence in
subsection (b).

The appellant artfully contends that subsection (e) of Rule
50, by use of the disjunctive "or," provides for *either* a motion for
a directed verdict at the conclusion of all of the evidence *or* a
motion for judgment notwithstanding the verdict. Standing
alone, the argument of the appellant would be persuasive.
However, subsection (e) of the rule must be read in the context of
the entire rule; when this is done, subsection (e) cannot be given
the interpretation argued by the appellant. Such an interpretation would be contrary to the clear language of that part of the
rule which is the very authority for a motion for judgment N.O.V.
— subsection (b).

A motion for a directed verdict at the close of the
plaintiff's case has as its purpose a procedure for determining
whether the plaintiff has met the burden of establishing a prima
facie case, with that question to be resolved by the court as a
matter of law. In the event the motion is overruled, the defendant
may elect to stand on the motion or to go forward with the

production of additional evidence, in which case he has waived any further reliance upon the former motion. *See Sanson* v. *Pullum,* 273 Ark. 325, 619 S.W.2d 641 (1981); *Granite Mountain Rest Home* v. *Schwarz,* 236 Ark. 46, 364 S.W.2d 306 (1963).

■ At the conclusion of all of the evidence, a party then has an opportunity again to test the sufficiency of all of the evidence for submission to the factfinder. This is accomplished, once again, by a proper motion for a directed verdict addressed to the court, thus affording the trial court an opportunity to rule prior to the submission of the case to the jury. In the event the motion is not granted, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion," it being contemplated that a motion for judgment N.O.V. will, or may be, made.

■ We believe that the intent of the rule is to require a party testing the sufficiency of the evidence first to submit the question to the trial court, thereby permitting the court to make a ruling at the conclusion of *all* the evidence but prior to verdict, thus preserving the specific question for appeal. On the other hand, the motion for judgment N.O.V. is permitted by the rule for the express purpose of not only again raising the question of sufficiency of the evidence but also all other questions of law properly preserved during trial, all of which are to be considered by the court in light of the verdict rendered.

■ We have long held that an issue, to be considered on appeal, must be properly preserved at trial. *Goodwin* v. *Harrison,* 300 Ark. 474, 780 S.W.2d 518 (1989). If, as the appellant contends, a litigant could first raise the issue of sufficiency of the evidence by a post-trial motion, this would be a sharp departure from the spirit of our rule.

■ We have consistently held that a motion for a directed verdict must be made or renewed at the conclusion of all of the evidence. Otherwise, questions of sufficiency of the evidence are waived. *Mitchell* v. *Goodall,* 297 Ark. 332, 761 S.W.2d 919 (1988); *Laster* v. *Tilley,* 295 Ark. 488, 749 S.W.2d 326 (1988); *Copelin* v. *Corter,* 291 Ark. 218, 724 S.W.2d 146 (1987). This is, however, apparently the first time that the interpretation of ARCP Rule 50 urged by the appellant has been presented to this

court. We decline to accept the appellant's interpretation and find that, at the conclusion of all the evidence, a failure to renew the motion for directed verdict attacking the sufficiency of all the evidence constitutes a waiver of the issue.

The appellant's point IV challenges the submission of the question of future medical expenses as being an issue based solely on speculation and conjecture. The evidence indicates that the appellee had undergone one surgery to his ear and six jaw surgeries at the time of trial. None of the surgical procedures had achieved more than temporary relief. The oral surgeon testified that the appellee continued to require medical treatment in the form of weekly injections and intermittent hospitalizations for pain and that the appellee would need "follow-up" medical care for an indeterminate period. The oral surgeon testified that an experimental surgical procedure called thermo-neurolysis might benefit the appellee. The cost of this procedure was estimated to be between $4,000 to $5,000 and testimony indicated that it would likely have to be repeated on an annual basis. Additionally, there was an abundance of evidence emphasizing the seriousness of the injuries, and that the medical problems had not been resolved even though the expense up to the time of trial was some $75,000.

It is not speculation or conjecture to calculate future medical expenses based upon the history of medical expenses that have accrued as of the trial date, particularly when there is also a degree of medical certainty that future medical expenses will be necessary. *Bill Davis Trucking, Inc.* v. *Prysock*, 301 Ark. 387, 784 S.W.2d 755 (1990); *Williams* v. *Gates*, 275 Ark. 381, 630 S.W.2d 34 (1982). Future medical expenses do not require the same degree of certainty as past medical expenses. *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983). Where the doctor testifies that the injured party might need future treatment and the injured party testifies he still suffers pain, that testimony is sufficient for consideration of the element of future medical expense. *Matthews* v. *Rodgers, supra.*

We find that it was not error to submit the issue of future medical expenses to the jury and the judgment of the trial court is affirmed.

Affirmed.