HMO ARKANSAS, INC. *v.* Jeffrey & Christine DUNN

92-82 840 S.W.2d 804

Supreme Court of Arkansas
Opinion delivered November 2, 1992
[Rehearing denied December 7, 1992.]

*Walters Law Firm, P.A.*, for appellant.

*Turner & Mainard* by: *James C. Mainard*, for appellee.

DAVID NEWBERN, Justice. This is an insurance case. The appellant, HMO Arkansas, Inc., contends it was erroneously held liable for the claim of the appellees, Jeffrey and Christine Dunn. We agree it was error for the Trial Court to apply provisions of the general laws governing health insurance providers to a health maintenance organization (HMO) such as HMO Arkansas, Inc.

Had the provisions specifically applicable to HMOs been applied, the Dunns' claim would have failed. We also conclude the Dunns could not recover under their contract of insurance because they failed to comply with its terms. We, therefore, must reverse the judgment and dismiss the claim. In view of our holding that the claim is to be dismissed, we need not address the parties' contentions with respect to the penalty and attorney's fee which were awarded, as they were dependent upon the basic recovery and, therefore, must also be reversed.

Christine Dunn was formerly married to Greg Thomas, an employee of Quanex Corporation, Mac Steel Division, located in Fort Smith. While married to Thomas, Christine was insured under the group health insurance policy provided by the employer through HMO Arkansas, Inc. Christine and Thomas divorced, and she elected to continue her coverage as a single person. She subsequently married Jeffrey Dunn, and they elected to continue coverage. Christine became pregnant and prematurely gave birth on February 11, 1989. At the time of the birth the Dunns had in effect a "couple" membership, and they did not notify the insurer of their intent to add the child to their coverage until after the birth.

Coverage was denied, and the Dunns sued to recover the birth costs. The Dunns argued that Ark. Code Ann. § 23-79-129 (1987) required coverage, but HMO Arkansas, Inc., argued the Statute was not applicable to HMOs. The Trial Court resolved the matter on a joint stipulation of facts and ordered HMO Arkansas, Inc., to pay the Dunns' claim for $59,431.42 plus attorney's fee and penalty without stating a basis for his conclusion.

HMO Arkansas, Inc., argues the Trial Court erred in holding the Dunns entitled to coverage because they were not entitled to it pursuant to the insurance contract or Arkansas insurance law.

### 1. The statutes

The statutes in question are:

23-79-129. Coverage of newborn infants.

(a) Every disability insurance policy, contract, certificate,

or health care plan sold, delivered, issued, or offered for sale, issue, or delivery in this state, other than coverage limited to expenses from accidents or specified diseases, whether an individual or group policy, contract, certificate, or plan, which covers the insured and members of the insured's family, shall include coverage for newborn infant children by the insured from the moment of birth.

\* \* \*

(b) The insurer may require that the insured give notice to his insurer of any newborn children within ninety (90) days of the birth or before the next premium due date, whichever is later.

(c) The Insurance Commissioner shall not approve any policy or contract to be sold, issued, or offered for sale in this state unless it shall specifically include the coverage required in this section for newborn infants.

This Statute is a part of the general provisions concerning all insurance policies written in the State. A specific provision found in a separate chapter covering health maintenance organizations is as follows:

23-76-104. Inapplicability of certain laws.

(a) Except as otherwise provided in this chapter, provisions of the insurance law and provisions of hospital and medical service corporation laws shall not be applicable to any health maintenance organization granted a certificate of authority under this chapter. This provision shall not apply to an insurer or hospital and medical service corporation licensed and regulated pursuant to the insurance laws or the hospital and medical service corporation laws of this state except with respect to its health maintenance organization activities authorized and regulated pursuant to this chapter.

■ When construing a statute we compare it with other statutes on the same general subject matter and if possible reconcile them. *Sargent* v. *Cole*, 269 Ark. 121, 598 S.W.2d 749 (1980). All acts passed upon the same subject matter should be construed together and made to stand if capable of being

reconciled. *Vandiver* v. *Washington County*, 274 Ark. 561, 628 S.W.2d 1 (1982).

■ Looking at the plain meaning of the language in these statutes there is no doubt that the general provisions of the insurance law do not apply to HMOs. The only insurance statutes applicable to HMOs are found in a chapter entitled "Hospital and Medical Service Corporations" and are identified in the HMO chapter as follows:

23-76-103. Applicability of 23-75-101 - 23-75-110 and 23-75-112 - 23-75-120.

Sections 23-75-101 - 23-75-110 and 23-75-112 - 23-75-120 shall be construed to apply to health maintenance organizations, health care plans, and evidences of coverage except to the extent that the commissioner determines that the nature of health maintenance organizations, health care plans, and evidences of coverage render such sections clearly inappropriate.

Nothing in any of these sections requires automatic coverage of a newborn from the time of birth, so we are left to determine whether the intent of the General Assembly will be defeated in this situation if the requirements of the general insurance law are not applied in this case. The answer to the question is clearly set out in the HMO Statutes as follows:

23-76-101. Purpose.

(a) The General Assembly determines that health maintenance organizations, when properly regulated, encourage methods of treatment and controls over the quality of care which effectively contain costs and provide for continuous health care by undertaking responsibility for the provision, availability, and accessibility of services.

(b) For this reason, and because the primary responsibility of a health maintenance organization lies in providing quality health care services on a prepaid basis without regard to the type and number of services actually rendered, rather than providing indemnification against the cost of the services, the General Assembly finds it necessary to provide a statutory framework for the establish-

ment and continuing regulation of health maintenance organizations *which is separate from the insurance laws of this state,* except as otherwise provided in this chapter [emphasis added].

■ The HMO law originated in Act 454 of 1975 which was approved on March 18, 1975. The general provisions of the insurance code set out in this case were enacted as Act 298 of 1975 and approved on March 3, 1975. With full knowledge of the general provisions of the insurance code the legislature specifically excepted HMOs from the general insurance provisions. The Trial Court, therefore, was in error in concluding that coverage was required if the decision rested upon § 23-79-129.

### 2. The contract

Nor does the contract provide a basis for recovery. It provides several categories of coverage. Article III of the Group Master Contract provides:

The employee may choose one of the following types of memberships, subject to the group's election of enrollment categories:

(1) Single membership, to include coverage for the employee only;

(2) Couple membership, to include coverage for the employee and spouse of the employee;

(3) Two party membership, to include coverage for the employee and one dependant child as defined in Article II. paragraphs A.2.(b), (c), or (d).

(4) Family membership, to include coverage for the employee and all eligible and enrolled dependents.

Article VI of the group contract provides:

Subject to payment of all applicable monthly membership charges and all other provisions of this contract or certificate, coverage shall become effective as follows:

\* \* \*

(d) Changing coverage due to pregnancy can occur effective on group's next first of the month if written notice is

received prior to delivery. Newborn coverage will then begin on the date of birth . . . .

(e) Coverage for newly eligible dependent, (other than a newborn or legally adopted child) will be effective the first day of the month following receipt by HMO of written application, if the member has a family contract, provided such application is made within 31 days after the Dependent becomes eligible for coverage.

Article II of the contract defines eligibility and provides as follows:

A. Who is Eligible

(2) Dependent. To be eligible to enroll as a dependent . . . . The person must also be either:

(b) An unmarried, dependent child of the Subscriber . . . .

NOTE: Children born to the Subscriber and/or his spouse, . . . . These children will be treated as dependents if enrolled within 31 days from the date of birth . . . .

 The contract is relatively simple. If there is a single or couple membership and there is a pregnancy the child is an eligible dependent who will be covered from birth if during the pregnancy the prospective parent elects, by application accompanied with the payment of the appropriate fee, to convert to a family or two party membership. If there is no election prior to the birth then the parent must apply within 31 days of the birth of the child to establish the child as a dependent within the meaning of Article II.A.2.

An application for a membership change accompanied by payment of the premium was mailed as of May 3, 1989, outside the 31 day period. The Dunns, therefore, failed to meet the contract requirements.

As there is no statutory coverage requirement and the Dunns did not fulfill the contract requirements, the judgment must be reversed.

Reversed and dismissed.