AMERICAN HEALTH CARE PROVIDERS, INC. *v.*
Michael U. O'BRIEN and Carla O'Brien

93-1406                                                886 S.W.2d 588

Supreme Court of Arkansas
Opinion delivered October 31, 1994

*Sam Sexton, Jr.*, for appellant.

*David Hodges* and *Jefferson Faught*, for appellees.

DAVID NEWBERN, Justice. Michael U. O'Brien and Carla O'Brien, who are husband and wife, sued American Health Care Providers, Inc., (AHCP), claiming breach of contract and the tort of bad faith. The O'Briens claimed that AHCP, a health maintenance organization, had breached its agreement to pay health care benefits incurred by the O'Briens and their three children.

The Trial Court directed a verdict in favor of AHCP on the bad faith claim but allowed the breach of contract claim to be decided by a jury which awarded $10,427.98 to Carla O'Brien. Judgment was entered for that amount plus fees of $5000 and $1250, respectively, to the two attorneys representing the O'Briens. AHCP appeals from the judgment in favor of Ms. O'Brien and from the refusal of the Trial Court to grant a new trial. The O'Briens cross-appeal from the directed verdict on their bad faith claim. In its appeal, AHCP states a number of

points, one of which has merit. We must reverse the judgment due to insufficient evidence in support of it. In view of our reversal of the damages award, we also reverse the attorney's fee award. *Brookside Village Mobile Homes* v. *Meyers*, 301 Ark. 139, 782 S.W.2d 385 (1990). On the cross-appeal, we affirm.

On April 1, 1987, Maxicare Arkansas, Inc., contracted with the City of Ozark to provide HMO health care protection to the employees of the City of Ozark on a year to year basis. On October 1, 1988, AHCP acquired the assets and liabilities of Maxicare and continued to provide HMO health care protection.

As employees of the City of Ozark, Carla and Michael O'Brien began coverage under the group contract in 1989. They were each issued a member identification card to be presented to the health care providers when medical services were received. On each card there was a membership identification number.

In May 1989 Carla was diagnosed as having breast cancer. Medical services covered by the contract were provided to her and paid for by AHCP. On April 30, 1991, AHCP terminated the group contract with the City because there were fewer than 10 employees in the covered group. Michael O'Brien applied to AHCP to convert his membership from the AHCP City of Ozark Plan to an AHCP individual HMO membership which would provide health care to him and members of his family. His application was accepted by AHCP, and the family thus remained in an AHCP HMO although under terms different from the city plan.

After cancellation of the city group contract as of April 30, 1991, and the conversion to the individual contract, the O'Briens were assigned a new AHCP identification number. There is conflicting evidence as to whether the O'Briens received a new membership card with their new identification number.

The O'Briens experienced difficulty in getting various medical bills paid by AHCP. Pharmacy bills, which had been covered under the group plan but which were not covered under the individual plan, were submitted but not paid. The O'Briens received notice that some other claims were not being paid by AHCP because their coverage had ceased April 30, 1991, the date the group coverage was terminated. Other notices were received to the effect that claims were not being honored because the O'Briens

had not received a referral from their primary care physician as required by AHCP.

In April 1992 the O'Briens brought the action which underlies this appeal and cross-appeal. AHCP moved to dismiss the bad faith claim on the basis that HMOs are not insurance companies and are not subject to the tort of bad faith. The motion was denied. AHCP moved for summary judgment supported by an affidavit and company records showing that it had paid all claims covered by the agreement. That motion was also denied, and the case proceeded to trial.

## 1. Bad faith

We are confronted at the outset with AHCP's contention that an HMO is not the same as an insurer and is thus not capable of the tort of bad faith. We have thus far limited the tort of bad faith to insurers, *Quinn Cos.* v. *Herring Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989); *Aetna Cas. & Sur. Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983), and we have said that an HMO is different from an insurer, at least to the extent that HMOs are not governed by the general provisions of the Arkansas Insurance Code. *HMO Arkansas, Inc.* v. *Dunn*, 310 Ark. 762, 840 S.W.2d 804 (1992).

But whether an HMO should be subjected to liability for bad faith refusal to pay claims, as insurers are, is a question we need not answer in this case because the Trial Court properly found there was no evidence of bad faith as we have described the tort. In *Aetna Cas. & Sur. Co.* v. *Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1983), we summarized some previous cases recognizing the tort of bad faith and described it as follows:

> [A] liability insurance company can be held accountable in tort for failure to settle a claim within the policy limits. . . . [A] claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy. Such a claim cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer.

Neither can this type claim be based upon negligence or bad judgment so long as the insurer is acting in good faith. . . . [I]n an action of this type for tort, actual malice is that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge. Actual malice may be inferred from conduct and surrounding circumstances.

Although the O'Briens list 63 instances of alleged wrongdoing on the part of AHCP, which we will not repeat because to do so would unduly lengthen this opinion, none of them rises to the level of bad faith. The most serious of the allegations, in our view, is that AHCP treated Carla O'Brien well when she was healthy but gave the O'Briens trouble in paying their claims after she was diagnosed as having cancer. The evidence was, however, that AHCP paid many of her medical expenses after Carla O'Brien had been diagnosed as having cancer. While it seems strange that it took a long time to straighten it out, the evidence shows that many, if not most, of the problems were the result of the changed identification number.

Other allegations include statements that AHCP improperly refused payment for an emergency room visit on the ground that there had been no true "emergency," failure to provide the O'Briens with a copy of the "policy" covering them, failure to honor claims because of lack of proper referral by a primary health care physician, and "dumping" Carla O'Brien on Medicare when she became eligible for that program.

We have no doubt that the O'Briens were subjected to a nightmarish red tape experience at a time when their family's financial and emotional resources were heavily taxed by Mrs. O'Brien's serious illness. We cannot say, however, that the conduct of AHCP amounted to "bad faith," as we have defined it. There was obvious confusion caused by the change in identification numbers. Equally obvious was confusion on the part of the O'Briens and AHCP over the referral process, given the need for involvement of doctors of various specialties after Mrs. O'Brien underwent mastectomies. As far as we can tell, however, the closest an AHCP employee came to demonstrating any malice was when, after numerous inquiries, an employee told Carla O'Brien that the company required higher premiums from them after the

cancellation of the group plan and that was "just the way it was," and if the O'Briens were not happy about it they could obtain insurance elsewhere.

None of the items listed demonstrated misconduct in circumstances of such a nature as to show malice. We cannot say the Trial Court erred in directing a verdict on the bad faith claim. As there was insufficient evidence to go to the jury on that claim had it been lodged against an insurance company, we need not decide whether it was proper for the Trial Court to refuse to dismiss the claim with respect to an HMO pursuant to Ark. R. Civ. P. 12(b)(6).

### 2. Breach of contract

We are precluded from reviewing the Trial Court's denial of AHCP's motion for a directed verdict on the breach of contract claim because AHCP's abstract does not demonstrate that the motion was renewed at the close of the evidence and the question is thus waived. Ark. R. Civ. P. 50(e); *Willson Safety Prods.* v. *Eschenbrenner*, 302 Ark. 228, 788 S.W.2d 729 (1990). Nor will we consider the argument that the Trial Court improperly denied AHCP's motion for summary judgment, as that is not an appealable matter. *Rick's Pro Dive 'N Ski Shop, Inc.* v. *Jennings-Lemon*, 304 Ark. 671, 803 S.W.2d 934 (1991). We do consider, however, the Trial Court's refusal to grant a new trial.

When a trial court denies a motion for a new trial on the ground that the verdict was not clearly contrary to the preponderance of the evidence, the test on appeal is whether there is substantial evidence to support the jury verdict. We must view the evidence in the light most favorable to the party against whom the motion was made and must affirm if there was any substantial evidence to support the verdict. Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or another. It must force the mind to pass beyond suspicion and conjecture. *First Marine Ins. Co.* v. *Booth*, 317 Ark. 91, 876 S.W.2d 255 (1994).

The damages claimed for breach of contract arose from four major bills Mr. O'Brien alleged were not paid by AHCP. Those bills are from Fort Smith Service Finance, a collection agency, for $1,108.78, Sparks Hospital for $1,282.62, Holt-Krock Clinic

for $3,172.00, and Home Oxygen Medical for $3,752.22. The bills were not offered into evidence, and Mr. O'Brien admitted on cross-examination that he did not know whether they had or had not been paid by AHCP, and he admitted on cross-examination that some of them had dates showing they were incurred after coverage had terminated due to failure to pay the premium. All we have in support of the damages based on those bills is the testimony of Mr. O'Brien. On direct examination he testified that the four major bills were outstanding and should have been paid by AHCP. On cross-examination, he said he did not know if they had been paid and he admitted clearly that some of them were for services rendered after coverage ceased. In these circumstances, his testimony is not sufficient to constitute substantial evidence that the bills were outstanding and to be paid by AHCP pursuant to their HMO agreement.

Mr. O'Brien was allowed to testify with respect to a number of smaller bills which he paid and which he contends should have been paid by AHCP. Copies of those bills were introduced into evidence along with an adding machine tape showing a total of $1,112.36. Upon examination of the supporting bills, it is apparent that some of them were for charges which were incurred after the termination of coverage, some were for pharmacy charges which were admittedly not covered, and at least one was clearly for a co-payment for which the O'Briens, rather than AHCP, were responsible.

There is simply no evidence from which a reasonable conclusion could be reached that the O'Briens were entitled to the verdict awarded in this case, thus the motion for a new trial should have been granted.

This case presents a somewhat peculiar procedural situation. The failure to present sufficient evidence on the bad faith claim results in affirmance of a directed verdict. The failure to present sufficient evidence on damages with respect to the contract claim results in reversal of the Trial Court's overruling of a new trial motion. That is so because of the posture of the case as presented by the AHCP. Its complaint about the contract damages took the form of a motion for new trial in accordance with Ark. R. Civ. P. 59(a)(5), and that resulted in its point on appeal requesting a new trial because of error in the assessment of damages.

■ Had this case been decided entirely by jury verdict, we would remand it for a new trial on all issues because we do not divide a jury verdict. *Smith* v. *Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993); *Manzo* v. *Boulet*, 220 Ark. 106, 246 S.W.2d 126 (1952). We may remand only one of two claims for a new trial when doing so does not divide a jury verdict. *Westinghouse Credit Corp.* v. *First Nat' l Bank of Green Forest*, 241 Ark. 287, 407 S.W.2d 388 (1966). As we are affirming the directed verdict on the bad faith claim due to lack of substantial evidence in support of it, we remand only the contract claim for a new trial. As the bad faith claim may not be retried, the evidence relevant to bad faith, which AHCP claimed to have affected the contract damages award, will not be before the jury.

Reversed and remanded.

BROWN, J., dissents.

ROBERT L. BROWN, Justice, dissenting. American Health Care moved to dismiss the bad faith claim on the basis that such claims cannot be brought against HMO's. The trial court denied the motion, and the O'Briens were allowed to present their bad faith claim at trial. After proof of bad faith was presented, the trial court granted American Health Care's motion for a directed verdict on that claim. The majority holds that this rendered moot any error that might have accompanied the original denial of the motion to dismiss. I do not agree.

The trial court's denial of the motion to dismiss allowed bad faith evidence to be presented to the jury in addition to proof of breach of contract. If American Health Care is right and there can be no claim for bad faith against an HMO, the company was prejudiced by the bad faith evidence which should not have been presented at the trial of the contract claim. Evidence of mental anguish and the like undoubtedly had some spillover effect on the jury and on its assessment of the contract claim. This is so even though the trial court ultimately decided that the proof submitted was not sufficient to support a claim of bad faith.

This court should decide whether a bad faith claim may be appropriately lodged against an HMO, and I would do so in this case. If a bad faith claim can be presented, no prejudice resulted to American Health Care at trial. But if a bad faith claim does

not lie against an HMO, American Health Care was prejudiced, and the case should be remanded for a new trial on that basis.

Because I do not believe that this case can be decided without reaching the bad faith/HMO issue, I respectfully dissent.