The Honorable Brent Haltom Prosecuting Attorney Eighth Judicial District Miller County Courthouse Texarkana, Arkansas 75502
Dear Mr. Haltom:
This letter is a response to your request for an opinion regarding the implementation by the City of Texarkana of a new form of city government.
Facts Upon Which Request for Opinion Are Based
You state that the city was involved in Voting Rights Act litigation from 1991 through March of 1995. You indicate that as a result of that litigation, the city is currently operating under a "7-0" form of government, one of the several forms of city government set forth in A.C.A. § 14-61-107. Under the 7-0 form, all seven directors are elected from wards established within the city, and the mayor is selected by vote of the directors. The 7-0 form was ordered by the judge, but he indicated that a "6-1" form of government for Texarkana would not violate the Voting Rights Act, and that the voters could elect to adopt that form for themselves if they chose to do so.[1] Under the 6-1 form, all directors except one are elected from wards, and one is elected at large, who will be mayor. You further indicate that prior to the conclusion of the litigation, the city did, in fact, elect to adopt a "6-1" form of government, but, of course, could not implement that form until after the litigation concluded. The city determined that it should implement the elected "6-1" form of government at the next general election after the conclusion of the litigation, basing its determination upon the provisions of A.C.A. 14-61-117(1), which requires implementation at the next general election (as opposed to at a special election). The city interpreted that provision to be mandatory.
During the 1995 legislative session, the legislature passed Act 750, which was sponsored by a representative from Miller County, in which Texarkana is located. Act 750 purports to amend certain statutes so as to insert provisions applicable to cities under federal court orders to redistrict wards under the Voting Rights Act. You indicate that a group of Texarkana citizens has now petitioned for a special election to implement the "6-1" form of government that it has legally chosen, believing that Act 750 amends A.C.A. § 14-61-117 so as to allow implementation of the new form of government at a special election.
The Questions Presented
With regard to the foregoing facts, you have presented the following questions:
 (1) Does Act 750 of 1995 amend A.C.A. § 14-61-117 so as to allow the 6-1 form of government to be implemented in the City of Texarkana, Arkansas, in a single special election?
 (2) If the answer to question (1) is yes, what sort of special election does Act 750 mandate, i.e., how is the special election initiated; who runs at the special election; when do the terms of those elected at the special election commence and end; and what disposition is made of the directors currently serving?
 (3) Without regard to Act 750 of 1995, can the 6-1 form of government be implemented in the City of Texarkana, Arkansas, through the use of the procedure set forth in A.C.A. § 14-61-117(4)(C) or is the City obliged to use only the procedure set forth in A.C.A. § 14-61-117(1)(2) and (3) in this regard?
Question 1
Foundation of Opinion
In response to your first question, it is my opinion that Act 750 of 1995 does not amend A.C.A. § 14-61-117. I have reached this conclusion by interpreting the statutes in question in accordance with the Arkansas Supreme Court's stated rules of statutory interpretation. Under those rules, a statute is to be read giving the words their commonly understood meanings, unless an ambiguity appears in the language of the statute.American Cas. Co. of Reading, Pennsylvania v. Mason, 312 Ark. 166,848 S.W.2d 392 (1993). A statute is "ambiguous" if its language is susceptible of two or more different interpretations. RussellvilleCanning Co. v. American Can Co., 87 F. Supp. 484 (1950), rev'd on othergrounds, 191 F.2d 38. In my opinion, neither the language of Act 750 of 1995, nor the language of the statutes to which it refers (A.C.A. §§14-61-113, -114, and -117) contains any ambiguity. Therefore, I must give the words of those laws their commonly understood meanings.
The Pertinent Statutes
The pertinent sections of Act 750 state:
SECTION 1. Arkansas Code § 14-61-113 is amended to read as follows:
 "14-61-113. Petition process for special elections. Except for questions that may be referred to the voters by the board of directors unless it is a city where a federal court has ordered the redistricting of wards under the federal Voting Rights Act, options provided by this chapter shall be voted on at special elections called as a result of a petition for the special election being filed with the city clerk and provided to the mayor. The following procedure shall be utilized for both initial elections to organize under the management form of government, for reorganization elections by a city already operating under the management form of government and for elections to reorganize the selection of directors in cities where a federal court has ordered the redistricting of wards under the federal Voting Rights Act."
* * *
SECTION 2. Arkansas Code § 14-61-114(a) is amended to read as follows:
 "(a)(1) Notwithstanding any other provision, the board of directors in a city operating under the management form of government may, by a two-thirds (2/3) vote of all the members, including the mayor, refer to a special or general election, for approval by a majority of the qualified electors voting on the issue, on (1) of the options set forth in § 14-61-107, provided no election on a board-referred option has been held within the previous two (2) years.
 (2) Notwithstanding the other provisions of this subsection and Arkansas Code § 14-43-201 and 14-61-117, in a city operating under the management form of government where a federal court has ordered the redistricting of wards under the federal Voting Rights Act, the voters of the city are authorized to petition for a special election to vote on the options set forth in Arkansas Code § 14-61-107 for reorganizing the selection of directors, including the election of a mayor at-large, at anytime. The option shall be voted on a special elections called as a result of a petition for the special election being filed with the city clerk and provided to the mayor under Arkansas Code § 14-61-113."
Acts 1995, No. 750, §§ 1 2.
The pertinent provisions of A.C.A. § 14-61-117 state:
 The following procedure will be used to implement this chapter by cities that have changed the manner by which directors and the mayor are selected:
 (1) If an option is chosen in which the mayor is directly elected, the position of mayor shall be elected at the first general election after the organization or reorganization of the city under the management form of government.
A.C.A. § 14-61-117(1).
Act 750 Only Addresses Elections Held For the Purpose of Choosing a Formof Government
When the above-quoted language is given its commonly understood meaning, it is clear that Act 750 of 1995 addresses elections held for the purpose of choosing the form of government — that is, elections held for the purpose of selecting one of the options set forth in A.C.A. § 14-61-107 — rather than elections held for the purpose of implementing the chosen form of government. The Act explicitly states that it amends §§ 14-61-113
and -114, which set forth the procedures for holding elections to choose the form of government. By contrast, it makes no mention of an intent to amend § 14-61-117, which is the section dealing with implementation of the option chosen in the elections described in §§ 14-61-113 and -114.
Sections 14-61-113 and -114 (i.e., the only sections that Act 750 expressly purports to amend) deal only with elections held for the purpose of choosing one of the options set forth in § 14-61-107. This is clear, first, from the unambiguous language of those sections. Both sections refer only to votes on the "options" provided for in the chapter. Section 14-61-113 states: "[O]ptions provided by this chapter shall be voted on at special elections. . . ." Similarly, § 14-61-114
states: "[T]he voters of the city are authorized to petition for a special election to vote on the options set forth in Arkansas Code §14-61-107. . . ." Giving this language its commonly understood meaning, it must be concluded that a "vote on an option" is a vote to choose among the available options. By contrast, a vote to implement an option would be a "vote on the candidates" or a "vote to implement the option chosen." It is pertinent to note that in contrast to Act 750 and §§ 113 and 114, section 14-61-117 explicitly states: "The following procedure will be used to implement this chapter by cities that have changed the manner by which directors and the mayor are selected." Section 14-61-117 then goes on to describe the procedures for implementation, including the instances in which a general election is required. It can therefore be concluded that §§ 14-61-113 and -114 cannot be construed to set forth procedures for implementation, because they would be in conflict with § 14-61-117. The Arkansas Supreme Court has held that different statutes relating to the same subject must be interpreted, if possible, so as to give effect to all provisions. HMO Arkansas v. Dunn, 310 Ark. 762, 840 S.W.2d 804
(1992).
The fact that §§ 14-61-113 and -114 address only elections held for the purpose of choosing the form of government is also clear from the fact that the procedures described in those sections explicitly must be initiated by the filing of "a petition that calls for an election on one (1) particular option for selecting members of the board of directors." A.C.A. § 14-61-113(1). (Section 14-61-114 states that its provisions are to be carried out by way of the procedures set forth in § 14-61-113.) Neither section sets forth a procedure that is initiated by filing a petition calling for an election on the candidates or an election to implement the new form of government.
Because Act 750 only addresses §§ 14-61-113 and -114, and because §§14-61-113 and -114 only address elections held for the purpose of choosing a form of government, it can be concluded that Act 750 only
addresses elections held for the purpose of choosing a form of government, and therefore provides no authority for holding a special election to implement a chosen form of government.
Act 750 States No Intent to Amend § 14-61-117 — The ImplementationSection
As previously noted, Act 750 makes no mention of an intent to amend §14-61-117. When Act 750 does make reference to § 14-61-117, it is clear in its statement of limitation to elections held for the purpose of choosing the form of government. That reference states in pertinent part: "Notwithstanding the other provisions of this subsection and Arkansas Code § 14-43-201 and 14-61-117, in a city operating under the management form of government where a federal court has ordered the redistricting of wards under the federal Voting Rights Act, the voters of the city are authorized to petition for a special election to vote on theoptions set forth in Arkansas Code § 14-61-107 for reorganizing the selection of directors, including the election of a mayor at-large, at anytime." This language is not ambiguous. It authorizes the voters to petition for a special election for the purpose of choosing a new form of city government, including a new manner of choosing the mayor. It does not authorize the voters to petition for a special election to implement
their choice of a particular form of government. Indeed, the section makes no mention of implementation. The Merriam-Webster Dictionary defines the word "notwithstanding" to be synonymous with the word "although" and with the phrase "in spite of." I therefore interpret the reference to § 14-61-117 (and the accompanying reference to A.C.A. §14-43-201, which provides that municipal officers are to be elected at general elections) to mean that although (or, in spite of the fact that)implementation must, under certain circumstances, occur at a general election, the election to make the choice of a form of government under § 14-61-107 can occur at "anytime." I do not interpret the reference to § 14-61-117 as an attempt to amend that section.
The Disfavor of Amendment By Reference and By Implication
This position is further bolstered by the fact that the Arkansas Constitution prohibits the amendment of statutes simply by reference to their titles. See Ark. Const., art. V, § 23. The act, in its new form, must be published in full — just as was done with Act 750's amendments to §§ 14-61-113 and -114. Although amendment can occur by way of implication, see, e.g., Vangilder v. Faulk, 244 Ark. 688, 426 S.W.2d 821
(1968), in which case the above-described constitutional provision does not apply, Pace v. State, to Use of Saline County, 189 Ark. 1104,76 S.W.2d 294 (1935), it must be noted that amendment by implication is not favored by the courts. Fireman's Fund Ins. Co. v. Polk County,260 Ark. 799, 543 S.W.2d 947 (1976). Indeed, in Fireman's Fund, the Arkansas Supreme Court declined to give effect to a claimed implied amendment where the provisions of the old and new laws were not so inconsistent that all of them could not stand. Id. In that case, the Court also indicated that it was influenced by the fact that the later act contained no language indicating an intent to amend the earlier one. As I read Act 750 and § 14-61-117, the provisions of those two laws are not so inconsistent that both cannot stand. Therefore, it would be inappropriate, under Arkansas precedent, to interpret Act 750 as having amended § 14-61-117 by implication. Moreover, Act 750 contains no language that would indicate an intent to amend § 14-61-117. Because the legislature explicitly stated its intent to amend §§ 14-61-113 and -114, it is reasonable to assume that had it intended to amend § 14-61-117, it would have stated that intent with equal clarity. The Arkansas Supreme Court has stated that a fundamental principle of statutory construction is that the express designation of one thing may properly be construed to mean the exclusion of another. See, e.g., Gazaway v. Greene CountyEqualization Bd., 314 Ark. 569, 864 S.W.2d 233 (1993).
Conclusion — Question 1
For these reasons, it is my opinion that Act 750 of 1995 did not amend A.C.A. § 14-61-117, and that therefore Texarkana's 6-1 form of government cannot be implemented in a special election, but rather, must be implemented at the next general election.
Question 2
Because of my negative response to your first question, it is unnecessary to answer your second question.
Question 3
In response to your third question, as you noted in your supplemental correspondence to my office, the City of Texarkana may not implement its elected 6-1 form of government through the procedures set forth in A.C.A. § 14-61-117(4)(C), because those procedures may only be used by cities that have chosen the option set forth in A.C.A. § 14-61-107(2). As you noted, Texarkana chose the option set forth in A.C.A. §14-61-107(3). Therefore, it must follow the implementation procedures set forth in A.C.A. § 14-61-117(1)(2) and (3).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SA/cyh
[1] See order dated February 3, 1995, Case No. 92-4001 93-4150, U.S. District Court, Western District of Arkansas, Texarkana Division.