STATE AUTO PROPERTY and CASUALTY
INSURANCE COMPANY *v.*
Larry and Drenda SWAIM

99-17                                      991 S.W.2d 555

Supreme Court of Arkansas
Opinion delivered June 10, 1999

*Hardin, Jesson, & Terry,* by: *J. Rodney Mills,* for appellant.

*Baker & Jnekins, PLLC,* by: *Rinda Baker,* for appellee.

ROBERT L. BROWN, Justice. This appeal involves a claim to pay insurance benefits under a homeowner's policy issued by appellant State Auto Property and Casualty Insurance Company (State Auto). The complaint was filed by the appellees Larry and Drenda Swaim, who are the insureds, and relief was sought for breach of contract and the tort of bad faith. The jury returned a verdict in favor of the Swaims on both counts. State Auto now raises several points for reversal. We affirm the judgment for damages relating to breach of contract but reverse the judgment for bad faith. We affirm the award of attorney's fees.

On April 21, 1996, the Swaims' home in Van Buren was damaged by a tornado. At the time, they had a homeowners insurance policy with State Auto which was sold to them by Bob Miller Insurance Agency. The policy covered damage and losses to the building and personal property and specifically provided for replacement costs. Three days after the tornado, State Auto sent adjusters to the Swaims' home and issued a $2,500 advance check to the couple. Adjuster Greg Miller then calculated the initial losses to be $34,230.89, and the Swaims agreed to this figure. On May 2, 1996, State Auto paid the Swaims $31,730.89 (the agreed losses to date less the $2,500 advance check and a $250 deductible) and issued a check for $1,500 for contents losses. On June 19, 1996, State Auto issued another check in the amount of $3,971.72 for contents losses. These payments total $39,702.61.

At the end of June 1996, the Swaims discovered further damage to their home and contents. They made additional claims to State Auto for $32,299.68, which included damage to the brick on the house, the overhead cabinets in the kitchen, the attic insulation, the cabinets surrounding the fireplace, the fireplace itself, the patio (which was cracked), appliances, countertops, and sheet rock in the kitchen, windows that needed repainting, and repairs approved by the insurance company and performed but not paid.

State Auto sent another adjuster, Martin Brown, to handle these items. On October 9, 1996, Brown determined that $19,892.80 was an appropriate amount to pay the Swaims for these claims. The balance of the amount claimed was denied because in State Auto's judgment some of the items were not covered under the policy, some of the repairs were not necessary, and other damaged items were not available for inspection.

On October 31, 1996, the Swaims filed a lawsuit against State Auto and Bob Miller Insurance Agency, alleging breach of contract and bad faith. They prayed for $31,226.65 in compensatory damages, $50,000 in punitive damages, and their costs and attorney's fees. In 1998, the matter was tried to a jury, which awarded the Swaims by special verdict $28,500 for breach of contract and $4,000 for bad faith. The trial court then awarded the Swaims $10,000 for attorney's fees pursuant to Ark. Code Ann. § 16-22-308, following an oral motion for fees by the Swaims' attorney after the trial. There was no award for punitive damages, and no verdict or judgment was taken against Bob Miller Insurance Agency.

## I.  Breach of Contract

When the plaintiffs rested, State Auto moved for a directed verdict on the breach-of-contract claim and argued that the Swaims had failed to prove entitlement to additional contents losses and had failed to furnish written estimates as required by the policy. The trial court denied the motion and did so again when the motion was renewed at the close of all the proof. After the verdict, State Auto moved for a judgment notwithstanding the verdict, asserting that the plaintiffs failed to produce sufficient evidence of breach of contract. The trial court denied this motion also.

When reviewing a denial of a motion for a directed verdict, this court determines whether the jury's verdict is supported by substantial evidence. *See Dodson v. Charter Behavioral Health Sys., Inc.*, 335 Ark. 96, 983 S.W.2d 98 (1998); *Avery v. Ward*, 326 Ark. 829, 934 S.W.2d 516 (1996). Substantial evidence is defined as evidence of sufficient force and character to compel a

conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond mere suspicion or conjecture. *See City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995); *St. Paul Fire & Marine Ins. Co. v. Brady*, 319 Ark. 301, 891 S.W.2d 351 (1995). When determining the sufficiency of the evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *See Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999); *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997).

Using this standard, we consider the evidence supporting the Swaims' claim in the light most favorable to the Swaims. The Swaims submitted claims for additional damages of $32,299.68 in June 1996, all of which directly related to damage caused by the tornado. Drenda Swaim testified that they did everything that was asked of them, that all of her claims were made in writing, and that only adjuster Martin Brown requested additional information from her, which she promptly provided. She also testified that adjuster Bob Miller told her to discard many items of personal property and purchase new ones. Bob Miller testified that his son told the Swaims to get their estimates together and hold them because State Auto only wanted to issue one more check. The jury was clearly free to believe Ms. Swaim and disbelieve Mr. Miller regarding compliance with the policy's documentation requirements.

The property that was disposed of, which State Auto claims it had a right to inspect, was personal property, which included a garbage disposal, a dining room light fixture, the contents in the refrigerator, a refrigerator, ladies clothing, electric cook top and range hood, surround sound speakers, oak medicine cabinet, and a JVC cassette tape deck. Ms. Swaim testified that "[w]e were told by Bob Miller that that [inspection] would not be necessary, under the circumstances, they would not have time to look at every item, and just go ahead and get rid of it." She also explained why she either discarded or replaced each item, and why some of her initial estimates were inaccurate. The jury was free to assess her credibility and believe her explanations. *See*

*Balentine v. Sparkman*, 327 Ark. 180, 937 S.W.2d 647 (1997); *Russell v. Colson*, 326 Ark. 112, 928 S.W.2d 794 (1996).

State Auto conceded that all the repairs were valid except for the ones discussed above (fireplace cabinets, kitchen sheet rock, kitchen cabinet, window painting, and attic insulation). Ms. Swaim testified that water had poured through the roof onto the attic insulation. Curtis Henderson, the contractor, testified that the insulation was wet when he was working at the home. Ms. Swaim also testified, along with Charles Swaim, her father-in-law, that the bookshelves alongside the fireplace pulled away from the wall. The problem with the kitchen cabinet, according to the Swaims, was that there was a gap at the corner where the cabinets met. The adjuster, Martin Brown, testified that it was possible that this could have resulted from a tornado if there were some kind of movement of the framing structure or that it could have resulted from moisture. Again, the jury believed the Swaims and not State Auto's adjuster in concluding that these repairs were necessary.

The final repair issue regards the sheet rock in the kitchen, which was initially repaired and paid for by State Auto. After the first repairs, a water stain was still visible as well as the repair patch itself. Curtis Henderson testified that the adjuster first told him to use a stain block on it but that the Swaims were unhappy with the repair because it did not cover the stain. He testified that this was a legitimate reason to redo the work. We do not read State Auto's policy as foreclosing the correction of defective repairs.

In sum, the evidence supporting the Swaims' breach-of-contract claim was substantial. We affirm the judgment on this point.

## II.   Bad Faith

State Auto also moved for a directed verdict on the Swaims' bad faith claim. The carrier argued that the tort was not proved because it had merely failed to pay the claim when the Swaims

wanted payment.[1] The trial court denied this motion because, in the court's words, there was a "scintilla of evidence" of bad faith for the issue to be submitted to the jury.

■ Again, we review the denial of a directed-verdict motion using a substantial evidence standard. *See Dodson v. Charter Behavioral Health Sys., Inc., supra.* An insurance company commits the tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured. *See Parker v. Southern Farm Bureau Cas. Ins. Co.,* 326 Ark. 1073, 935 S.W.2d 556 (1996); *R.J. "Bob" Jones Excavating Contractor, Inc. v. Firemen's Ins. Co.,* 324 Ark. 282, 920 S.W.2d 483 (1996); *Reynolds v. Shelter Mut. Ins. Co.,* 313 Ark. 145, 852 S.W.2d 799 (1993). We have defined "bad faith" as dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge. *See* AMI 407; *see also Affiliated Foods Southwest, Inc. v. Moran,* 322 Ark. 808, 912 S.W.2d 8 (1995); *American Health Care Providers, Inc. v. O'Brien,* 318 Ark. 438, 886 S.W.2d 588 (1994). Mere negligence or bad judgment is insufficient so long as the insurer is acting in good faith. *See Stevenson v. Union Std. Ins. Co.,* 294 Ark. 651, 746 S.W.2d 39 (1988). The tort of bad faith does not arise from a mere denial of a claim; there must be affirmative misconduct. *See Parker v. Southern Farm Bureau Cas. Ins. Co., supra.*

As before, we consider the evidence in favor of the Swaims. Drenda Swaim testified that at least five different adjusters were sent to their home in the first three months after the tornado. She stated that State Auto kept giving them the "runaround" and dragging everything out. Larry Swaim testified that Bob Miller told him that several different adjusters were being used because State Auto believed the earlier ones had assessed the damages too highly. Additionally, both Swaims testified that Miller told them to throw away certain personal property, but State Auto then asked to inspect the items and refused to pay for them when they could not be produced. Ms. Swaim also testified that State Auto

---

[1] The Swaims did not sue for the twelve percent penalty or attorney's fees under Ark. Code Ann. § 23-79-208 (Repl. 1992), which relates to delayed payments by an insurance carrier after demand.

had lied to her about when the claims would be paid. For example, when the check for $3,971.22 was issued for contents losses, the adjuster stated in his report that "[a]fter you have replaced the items, please forward the receipts and we will pay you for the difference, not to exceed the $1,884.55 withheld."

In short, the Swaims' theory of bad faith was premised on State Auto's method of operation in utilizing a series of adjusters until getting the desired result in order to reduce the amount of the claim and engaging in other conduct designed to limit the company's liability and delay payment. On cross-examination Drenda Swaim explained the basis for her cause of action in this manner:

Q. You've also alleged, or you discussed with Mr. Baker that you felt State Auto had acted in bad faith, the way they handled this claim, is that primarily attributable to the fact, that it's taken awhile to resolve this matter?

A. Yes. They just gave us the runaround, keep (*sic*) giving us different adjustors, and it took so long to do anything.

Q. When you say taken so long to get an adjustor, that applies, [it] took awhile for State Farm to get to your house, but you told us, earlier, the adjustor was at your house a week after the tornado?

A. Well, on May 15, we got a letter from the man and he said he'd get an adjustor to our house for additional damages, and it took until — well, a month or two.

Q. That would be when Mr. Brown became involved in the case?

A. Yes, sir.

Q. You say that's for additional damages? State Auto has resolved the issue and paid you for dwelling damages and content damages up to that point, am I correct?

A. Well, I'm going on estimates, that we hadn't actually received, that's what they thought was fair.

Q. I believe you told me in your deposition that State Auto never made any false representations or statements to you concerning coverage, is that still your testimony, today?

A.  It just wasn't cleared for us to work on it.

Q.  That's really the basis of your bad faith claim, am I right?

A.  Yes.

■ We are initially confronted with the fact that the trial court used the wrong standard in denying State Auto's directed-verdict motion on bad faith. The standard that should have been employed was whether the Swaims had presented substantial evidence of a bad faith violation. The trial court, however, determined that there was a "scintilla" of evidence and submitted the issue to the jury on that basis. A scintilla or trace of evidence is far less than substantial evidence. Had the trial court used the correct standard, it may well have granted the motion.

■ But turning to the merits, this court has held on several occasions that a mistake on an insurance carrier's part or negligence or confusion or bad judgment will not suffice to substantiate the tort of bad faith. *See, e.g., Southern Farm Bureau Cas. Ins. v. Allen*, 326 Ark. 1023, 934 S.W.2d 527 (1996); *Parker v. Southern Farm Bureau Ins. Co., supra; Affiliated Foods Southwest, Inc. v. Moran, supra.* For example, we have held that nightmarish red tape, an abrupt attitude evidenced by an insurance representative about higher premium costs following cancellation of a group policy, and confusion over the referral process did not amount to bad faith. *See American Health Care Providers v. O'Brien, supra.* Nor did the fact that an insurance company waited three months to investigate a claim. *See Reynolds v. Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993).

Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage (*Southern Farm v. Allen, supra*); aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; (*Viking Insurance Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992)); and where a carrier intentionally altered insurance records to avoid a bad risk (*Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984)).

In the instant case, we first note that State Auto approved $19,892.80 in additional claims on October 9, 1996, and the Swaims sued for $31,226.65 for breach of contract three weeks later. The jury, however, did not award the Swaims the full value of their claim but awarded damages of only $28,500 for breach of contract, which lends some credence to the argument that the claims legitimately were in dispute. Moreover, the fact that State Auto dragged its feet in paying claims and disputed other claims may have warranted a twelve percent penalty and attorney's fees under § 23-79-208, but it does not constitute substantial evidence of bad faith. Nor does the fact that State Auto had multiple adjusters. Probably the most troublesome allegation in this case is that State Auto would not pay certain claims on personal property after the Swaims had discarded the property on recommendation of an earlier adjuster. We view this conduct, though, as evidence of confusion caused by different claims adjusters and not evidence of a state of mind characterized by hatred, ill will, or a spirit of revenge. *See American Health Care Providers, Inc. v. O'Brien, supra.*

The trial court erred in refusing to direct a verdict on this count. We reverse the judgment as it relates to bad faith and dismiss.

### III. Other Points for Reversal

Because we have reversed the judgment with respect to bad faith, we need not address State Auto's other points regarding that claim.

As for the other arguments mounted by State Auto relating to the judgment for breach of contract, we find no basis for reversing the denial of State Auto's motion JNOV for reasons already stated. Nor do we agree that the verdict and judgment are clearly against the preponderance of the evidence so as to warrant a new trial under Ark. R. Civ. P. 59(a)(6).

State Auto does contend that it was error for the trial court to allow the Swaims to amend their pleadings to conform to the proof under Ark. R. Civ. P. 15(b), when the loss claims had not all been presented to State Auto. We do not agree with State Auto's premise. Drenda Swaim testified that all losses were

presented to State Auto adjusters, and we have no reason to discard her testimony. We are also mindful of the fact that the jury's damage award for breach of contract ($28,500) was less than the amount either claimed by the Swaims ($31,226.65) or proven at trial ($32,299.68). This point does not merit reversal.

## IV. Attorney's Fees

Following the verdict in this case, the Swaims asked for their attorney's fees. There was no written motion. The court awarded them $10,000 pursuant to Ark. Code Ann. § 16-22-308 (1987) and included that amount and the statutory reference in the judgment entered. State Auto then moved to set aside the attorney's fees, and the Swaims responded. The trial court denied the motion to set aside.

State Auto first argues that the attorney's fee award was improper to the extent it can be attributed to the tort of bad faith. This argument is meritless. The trial court specifically made reference to § 16-22-308 in its judgment, and that statute includes an award of fees for breach of contract and not for torts.

State Auto also contends that the attorney's fee award did not comply with Ark. R. Civ. P. 54(e). This rules provides in part:

> (e)(1) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

> (2) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute or rule entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.

It is clear to us that Rule 54(e)(1) does not require a written motion. This subsection is followed by Rule 54(e)(2) which states that a motion must be filed "unless otherwise provided . . . by order of the court." Thus, we conclude that the fact that the Swaims' motion was oral is not fatal to the fees awarded under the rule. We further conclude that the judgment of the

court specifically found that $10,000 in attorney's fees should be awarded pursuant to § 16-22-308, which obviates the need for a motion to be filed requesting the fees.

State Auto further contests the amount of the attorney's fees awarded and contends the fees are excessive and not reasonable. An award of attorney's fees under § 16-22-308 is discretionary with the trial court and will not be reversed absent an abuse of discretion. *See Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993). The Swaims respond by emphasizing the complexity of the case and the ten-hour trial. State Auto really presents no basis for unreasonableness other than the amount of the award. We find no abuse of discretion on the trial court's part.

Affirmed in part. Reversed and dismissed in part.