**UNITED STATES of America, Appellee,**

v.

**Ervin J. KLAPHAKE, Appellant.**

No. 94–3864.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1995.

Decided Aug. 30, 1995.

Rehearing Denied Oct. 5, 1995.

Steven A. Peterson, Bloomington, MN, argued (Thomas L. Iliff, on the brief), for appellant.

Wade W. Parrish, U.S. Dept. of Justice, Washington, DC, argued (Robert E. Lindsay, Alan Hechtkopf and Loretta C. Argrett, on the brief), for appellee.

Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,* Senior District Judge.

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

WOLLMAN, Circuit Judge.

Ervin J. Klaphake appeals his conviction of two counts of tax evasion in violation of 26 U.S.C. § 7201. We affirm.

## I.

Klaphake owned and operated a 500–acre farm in Melrose, Minnesota. In 1983, Norbert Stelton and James Noske, both realtors, and Joan Noske, an accountant and tax return preparer, spoke with Klaphake concerning the formation of business trusts. Shortly thereafter, Klaphake transferred his farm real estate to Golden Acres Company ("Golden Acres"), a business trust, and conveyed his farm equipment and livestock to Green Valley Farm Company ("Green Valley"), also a business trust. In return for these property transfers, Klaphake received shares in both trusts. Joan Noske subsequently prepared all tax returns for the trusts as well as Klaphake's individual return.

In the years following 1983, income and expenses for the farming operation were reported under Green Valley's tax returns. The trust itself paid no taxes but instead would distribute the net profits to its beneficiaries, who then would be required to pay taxes on the distributions received. The beneficiaries consisted of Klaphake's three sons, another trust entity, Hilltop Height Co., and a company known as BBCA, Inc. BBCA, Inc. was a non-profit corporation established by the Noskes in 1980. A large portion of the net farming income was distributed to BBCA, Inc. Because BBCA was a non-profit organization, it was not required to pay income taxes on the distributions received from Green Valley. The distributions to BBCA were deducted from Green Valley's taxable income as a charitable deduction. Between 1984 and 1988, the only farm income reported by Klaphake on his individual tax return consisted of distributions from Hilltop Height. Although the farming operation reported net earnings of approximately $1,000,000 during that same time period, Klaphake paid less than $18,000 in federal income taxes.

Klaphake was subsequently indicted by a federal grand jury on two counts of tax evasion for the 1987 and 1988 tax years. At trial, the government attempted to establish that the creation of the business trusts lacked any economic substance and was part of a series of transactions designed to evade income taxes. The evidence showed that the farming operation remained essentially unchanged following the transfer of property to Golden Acres and Green Valley and that Klaphake retained control over the financial aspect of the operation and the trust property. It was also established that BBCA did not have a valid charitable purpose, that distributions to BBCA had been overstated, and that Klaphake had received cash back from BBCA on a regular basis. An Internal Revenue Service (IRS) agent testified that after recalculating the amount of tax owed by Klaphake as if the trust arrangement had never existed, there remained a balance due of $13,404 for 1987, and $8,610 for 1988. Klaphake's primary defense was that he relied completely on the advice of Stelton and the Noskes and that he made the property transfers for estate planning purposes. He further claimed that his sons were in control of Green Valley and that he was generally unaware of the large distributions to BBCA. Klaphake also claimed that he sincerely believed that BBCA was a valid charitable organization.

The jury convicted Klaphake on both counts. The district court[1] sentenced him to 21 months' imprisonment, to be followed by three years of supervised release, and imposed a $4,000 fine and a $100 assessment. Klaphake was also ordered to pay costs in the amount of $2,236.45. This appeal followed.

## II.

### A.

Klaphake first argues that the district court erred in refusing to exempt Joan Noske from its sequestration order during the government's case-in-chief pursuant to Federal Rule of Evidence 615(3). He argues that it was essential that Noske remain in the courtroom during the trial to assist counsel in presenting a defense.

A party seeking to exempt a witness from a sequestration order must show that the witness has such specialized expertise or intimate knowledge of the facts that the party could not effectively function in the witness's absence. *United States v. Agnes,* 753 F.2d 293, 306–07 (3d Cir.1985).

We conclude that Klaphake has failed to establish that his attorney could not effectively function in Noske's absence or that Noske was unable to present essential testimony without having heard the trial testimony of other witnesses. Although Klaphake argues that Noske was intimately aware of the manner in which his taxes were prepared and that she had the best knowledge whether various documents contained her handwriting, he does not explain why information concerning such matters could not have been communicated to his attorney prior to trial. Moreover, Noske was a fact witness, and her professional relationship with Klaphake increased the possibility that she might modify her testimony to comport with that of other defense witnesses. *See Agnes,* 753 F.2d at 307. We likewise reject Klaphake's claim that the sequestration order precluded Noske from giving expert testimony. The district court expressly stated that Noske would not be barred from expressing opinions as an expert, assuming that she was qualified to do so. Once the district court lifted its sequestration order after Noske had subsequently invoked her privilege against self-incrimination, Klaphake was free to call her as an expert witness and disclose to her the testimony of other witnesses. Accordingly we find no error in the district court's refusal to exempt Noske from the sequestration order.

### B.

Klaphake next argues that the district court committed reversible error by allowing

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

the government to introduce evidence that materially varied from the bill of particulars. We disagree.

◼ The indictment and bill of particulars alleged that Klaphake filed false and fraudulent income tax returns in 1987 and 1988, thereby understating the income he earned from the operation of his farm. It was further alleged that the creation of the business trusts lacked economic substance. This information sufficiently apprised Klaphake of the charges he would be required to defend against and allowed him to effectively prepare for trial. *United States v. McMahan,* 744 F.2d 647, 651 (8th Cir.1984).

#### C.

Klaphake next challenges certain evidentiary rulings made by the district court at trial. Specifically, he argues that the district court erred in (1) allowing the government to introduce evidence concerning his failure to pay taxes in 1984, 1979, and 1980; and in 2) denying him the ability to introduce additional evidence concerning those years to fully explain the circumstances surrounding the tax assessments.

At trial, the government introduced an IRS Certificate of Assessments and Payments for the 1984 tax year showing that Klaphake had agreed to a tax deficiency of $26,000. The purpose of this evidence was to rebut defense counsel's contention during opening statement that Klaphake owed less than $2,000 in taxes. Similarly, the government cross-examined Klaphake concerning his failure to pay taxes in 1979 and 1980 after Klaphake testified during direct examination that he always paid his taxes. Klaphake argued to the district court that the IRS Certificate erroneously included a reference to a "fraud" penalty rather than a "negligence" penalty. As a result, he attempted to introduce documentary evidence to support that claim and to further explain his failure to pay taxes in 1979 and 1980. The district court ruled that Klaphake adequately raised the issue of the error in the IRS Certificate during cross-examination and that further inquiry into matters that were not directly at issue in the case would unnecessarily confuse the jury.

◼ We conclude that the district court did not abuse its discretion in ruling on these issues. Although the 1984, 1979, and 1980 tax years were not directly at issue in the case, Klaphake opened the door concerning the amount of taxes owed for those years by making statements to that effect during opening statement and during his direct testimony. It was therefore permissible for the government to rebut those statements. Moreover, we agree with the district court that further inquiry into matters not directly at issue in the case could have diverted the jury's attention from the issues relating to Klaphake's guilt or innocence. *See United States v. Dakins,* 872 F.2d 1061, 1063 (D.C.Cir.), *cert. denied,* 493 U.S. 966, 110 S.Ct. 410, 107 L.Ed.2d 375 (1989). Finally, even assuming that the IRS Certificate incorrectly referred to a fraud penalty, we conclude that any error in failing to correct that reference was harmless.

Klaphake argues that the government's submission of the IRS Certificate constituted the use of false evidence. The district court found that, assuming the evidence was false, the government's use of the IRS Certificate was unintentional. This finding is not clearly erroneous. As we have held that any error in failing to correct the reference to the fraud penalty was harmless, we cannot say that "an acquittal would probably result on retrial." *United States v. Tierney,* 947 F.2d 854, 861 (8th Cir.1991) (standard for review of innocent use of false evidence).

#### D.

Klaphake argues that the district court erred when it excluded certain expert testimony. Specifically, he contends that the district court should have allowed John Koch, an attorney, to testify as to the legality of the business trusts.

◼ We agree with the district court that it was not proper for Koch to testify concerning the legality of the trust arrangement. As a general rule, "questions of law are the subject of the court's instructions and not the subject of expert testimony." *United States v. Vreeken,* 803 F.2d 1085, 1091 (10th Cir.

1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *see also, e.g., United States v. Ingredient Technology Corp.,* 698 F.2d 88, 97 (2d Cir.), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). We do not agree with Klaphake that the district court's ruling completely eviscerated his reasonable-reliance defense. The district court did not totally exclude Koch's testimony, but rather limited his testimony to matters within his personal knowledge. Koch testified that he was retained in 1980 by Stelton and James Noske to prepare a prototype trust document. He further testified concerning the legitimate purposes and advantages of business trusts. To further support his reliance defense, Klaphake was allowed to introduce a letter written by Koch opining that the Noske trusts were legitimate.[2] Thus, the jury was made aware of Koch's opinion. Accordingly, we conclude that the district court did not abuse its discretion in limiting Koch's testimony.

### E.

Klaphake argues that the district court erred in denying his motion for an evidentiary hearing or a new trial on the basis of juror misconduct. During deliberations, the foreperson of the jury submitted a note to the district court advising that she was resigning as the jury foreperson. The reason given for the resignation was "the events that having [sic] been occurring in this jury room, including the feeling of threat to my personal safety[.]" The jury subsequently submitted an additional note to the district court stating that "[w]e have elected a new foreman." In response to these notes, the district court asked counsel for Klaphake and the government for suggestions on how to proceed. Both agreed that the jury be allowed to continue its deliberations without further instruction from the court. We agree with the district court that Klaphake waived any objection in the handling of this matter by not contesting the continuation of jury deliberations.

### F.

Finally, Klaphake argues that the government deliberately withheld exculpatory evidence. He contends that prior to trial the government had in its possession a report, authored by one of its expert witnesses, that revealed some uncertainty as to the author of certain documents that were subsequently introduced as evidence. He further argues that the report could have been used at trial to impeach another government witness who testified that the author of those documents was Joan Noske. Klaphake failed to raise this issue with the district court, however, and thus it is not properly before us.

The conviction is affirmed.

---

**2.** We have considered Klaphake's additional argument with respect to the district court's limit-

ing instruction concerning introduction of the letter and conclude that it is without merit.