# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3931/3932

_____

| | | |
|---|---|---|
| Southern Pine Helicopters, Inc., | * | |
| | * | |
| Cross-Appellant/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Phoenix Aviation Managers, Inc.; | * | |
| Old Republic Insurance Company, | * | |
| | * | |
| Appellants/Cross-Appellees. | * | |

_____

Submitted: December 11, 2002

Filed: February 26, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This is an action by Southern Pine Helicopters, Inc., to recover on an insurance policy issued by Old Republic Insurance Company through Phoenix Aviation Managers, Inc., and for damages occasioned by Phoenix's bad faith. (We shall occasionally refer to appellants collectively as Phoenix.) After the district court[1] granted summary judgment against Southern Pine on its bad-faith claim, the case

_____

[1]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

proceeded to trial on the contract claim, and a jury returned a verdict for Southern Pine. Phoenix appeals from the judgment entered on the verdict against it, and Southern Pine cross-appeals from the summary judgment entered on its bad-faith claim. We affirm.

I.

One of Southern Pine's helicopters was damaged by a fire that broke out in its engine compartment, but Phoenix asserts that the loss was not covered because two exclusions in the relevant policy applied. By their terms, those exclusions (the applicability of which it was Phoenix's burden to prove) operate if the helicopter was being "operated in violation of any Federal Aviation Administration regulation which applies to repairs, alterations or inspections [or] in violation of the terms of its Federal Aviation Administration Airworthiness Certificate." As relevant here, the terms of the airworthiness certificate require nothing beyond compliance with applicable FAA regulations; hence we treat both exclusions as the same. Phoenix asserts that the evidence was insufficient to support the verdict against it.

Our review of the sufficiency of the evidence to support a jury verdict is ordinarily quite limited. Here, it is even more limited because Phoenix evidently did not preserve the issue below: We see nothing in the record to indicate that Phoenix moved for judgment as a matter of law before the case was submitted to the jury or after the jury returned its verdict. *See* Fed. R. Civ. P. 50(a), (b). Thus, instead of reviewing the evidence supporting the jury verdict for substantial evidence, as we would normally do in a diversity case arising from a district court located in Arkansas, *see National Am. Ins. Co. v. Hogan*, 173 F.3d 1097, 1103 (8th Cir. 1999), we review the evidence for "plain error" and will set the verdict aside only to prevent a "manifest miscarriage of justice," *see Cross v. Cleaver*, 142 F.3d 1059, 1069-70 (8th Cir. 1998).

Phoenix argues first that the evidence indisputably established that the helicopter was being operated in violation of FAA regulations, and thus the exclusion applied, because an annual inspection had not been performed in the twelve months preceding the accident, as required by 14 C.F.R. § 91.409(a)(1). That regulation provides that, except in certain enumerated circumstances, "no person may operate an aircraft unless, within the preceding 12 calendar months, it has had ... [a]n annual inspection in accordance with part 43 of this chapter and has been approved for return to service by a person authorized by § 43.7 of this chapter." In response, Southern Pine contends that an annual inspection was not required because the helicopter had been a military aircraft and was maintained, with FAA approval, under a so-called TM-20 program, a military maintenance regime that requires only 25-, 50-, and 100-hour inspections, not annual ones.

FAA regulations specifically except aircrafts that undergo "progressive inspections" from the annual inspection requirement when the local branch of the FAA has approved a "progressive inspection" plan. 14 C.F.R. § 91.409(a), (c)(3), (d). Southern Pine's mechanic testified at trial that the FAA had approved maintenance of the helicopter pursuant to the TM-20 regime. Although we have significant reservations about whether the TM-20 maintenance regime qualifies as a progressive inspection, we are far from certain that it does not. For instance, while we recognize that the TM-20 requires 100-hour inspections and that many FAA regulations explicitly differentiate between progressive inspections and 100-hour inspections, *e.g.*, 14 C.F.R. §§ 43.15, 65.95, we note that the FAA administrator may alter any proposed progressive inspection program to include 100-hour inspections. *See* 14 C.F.R. § 135.419(a); *see also* L. Ronald Jorgensen, *The Defense of Aviation Mechanics and Repair Facilities from Enforcement Actions of the Federal Aviation Administration*, 54 J. Air L. & Com. 349, 405 (1988). We also note that Phoenix did not explain at trial (or in its briefs) why the "progressive inspections" exception does not apply here. We thus do not believe that any error, if there is one, is obvious

enough to be plain.  *Cf. United States v. Caldwell*, 97 F.3d 1063, 1069 (8th Cir. 1996).

Phoenix argues second that the policy exclusion is applicable because Southern Pine had made a modification to the helicopter's elevator that was not in accordance with FAA regulations.  Southern Pine responds that the FAA had recently approved the elevator modification pursuant to something called a "337 application" pertaining to a different alteration to the helicopter.

With respect to this issue,  we detect no manifest injustice in the verdict against Phoenix because Phoenix has failed to identify a regulation that the elevator modification violated.  At trial, a mechanic testified that the modification was one that should not have been performed on the helicopter in question "according to Garlick Helicopter," but Phoenix has not explained what this meant or why "Garlick Helicopter" is an authoritative source that is entitled to legal force.  The testimony of Southern Pine's owner that the FAA was well aware of the modification in question, moreover, provides some evidence that the modification was not contrary to applicable regulations.  In any event, given the state of the record, it is clear that the jury verdict does not represent a manifest miscarriage of justice, particularly since it was Phoenix's burden of proof to establish the applicability of the exclusion.

Our review of this case has been hampered not a little by the way that the parties chose to try it.  The evidence took the form, essentially, of a battle of experts opining as to whether Southern Pine had violated FAA regulations.  As we have had occasion to remark before, however, expert testimony on legal matters is not admissible.  *See United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995).  Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them.  *See id.*  Here, the parties did not request instructions on the relevant federal legal principles and so the district court gave none.

Of course, industry practice or standards may often be relevant in cases like the present one, and expert or fact testimony on what these are is often admissible. *See Wood v. Minnesota Mining & Mfg.*, 112 F.3d 306, 310 (8th Cir. 1997). But that is not what this case was about. This case was about whether federal law was contravened, and expert opinion as to that was simply inadmissible.

## II.

Phoenix next contends that the district court erred in allowing Southern Pine to ask questions that intimated, and to argue to the jury, that under the relevant policy a holder of a lien on the helicopter (here a bank) would automatically receive ninety percent of the helicopter's insured value if the exclusion applied. Phoenix maintains that this representation unfairly prejudiced the jury's calculation of damages.

The lienholder endorsement in the policy provides that, in the event of physical damage to the helicopter, Old Republic would still pay the bank for an otherwise covered loss if Southern Pine's act or neglect triggered an exclusion. The amount of such a payment, according to the endorsement, "will not exceed the least of" the unpaid balance of the lien less certain items, the amount of the lien as reflected in a schedule, or ninety percent of the insured value of the aircraft. The lienholder endorsement also provides that, if the lienholder is paid under this provision, Old Republic would succeed to all the rights that the lienholder had against Southern Pine under the lien and that Southern Pine would have to reimburse Old Republic for any payment made to the lienholder.

Southern Pine first brought this lienholder endorsement to the jury's attention during its opening statement. When Phoenix objected, the district court reserved ruling on the matter because opening statements are not evidence. Then at trial, Southern Pine questioned Tim Geil, Phoenix's insurance adjuster, about why he did not mention the endorsement in a letter that he had written to Southern Pine. The letter stated that Phoenix believed that the helicopter was operated in violation of

FAA regulations, and that, if Southern Pine did not accept Phoenix's offer of $51,000, Southern Pine was going to deny coverage. Southern Pine pressed Mr. Geil to explain why Phoenix threatened to deny coverage if Phoenix would still have to pay the bank $297,000 (ninety percent of the insured value). Phoenix objected again, arguing that the lienholder endorsement was irrelevant and that Southern Pine's construction of it was inaccurate.

In response, Southern Pine contended that the existence of the lienholder endorsement, and Mr. Geil's omission of it in his letter, indicated that Mr. Geil did not really believe that the helicopter had been operated in violation of FAA regulations, because if it had been Phoenix would have had to pay $297,000 to the lienholder. In other words, Mr. Geil's threat to deny coverage, Southern Pine contends, was merely an artificial stratagem, because the denial of coverage was contrary to the insurer's interests, and the lienholder endorsement was therefore evidence that "impeached" Mr. Geil's testimony with respect to damages and alleged violations of FAA regulations. The district court then overruled the objection, and allowed Southern Pine to continue questioning Mr. Geil about his understanding of the endorsement "relative to his understanding of the coverage." In closing argument, Southern Pine repeatedly referred to the fact that Phoenix would have to pay $297,000 to the bank if Southern Pine's recovery was barred by the exclusions in the policy. Phoenix objected, and the district court overruled the objection on the ground that closing arguments are not evidence.

The lienholder endorsement in the policy provides that payment to the bank cannot exceed the least of the three enumerated possibilities, all of which, Southern Pine contends, would amount to $297,000 because the aircraft was a total loss and the loss was all covered. Because Mr. Geil knew all that, the argument runs, and set up a defense to Southern Pine's claim that would, if proved, actually trigger Phoenix's duty to pay a large amount of money, his threat to deny coverage was simply a feint to inveigle Southern Pine into a settlement.

-6-

We detect three infirmities in Southern Pine's argument. The first is that if the facts could give rise to an inference that Mr. Geil's state of mind was as Southern Pine argues, we doubt that his state of mind would be admissible on the issue of Mr. Geil's credibility. (It might have been substantive evidence that supported Southern Pine's claim). If Mr. Geil's position was a stratagem because it was contrary to Phoenix's actual interests, moreover, it was one that Phoenix pursued relentlessly throughout the trial. Finally, it appears to us that Mr. Geil's threat to deny coverage was not necessarily contrary to Phoenix's interests, because payment to the lienholder is of course limited to losses that would have been covered but for the applicability of the exclusion, and Phoenix has never conceded that the entire loss fell in that category.

Even if Southern Pine's questions were improper, however, and its argument contrary to law, we are obliged to inquire whether any error that was committed was harmless. "An error, in order to be reversible, must affect a substantial right of the objecting party, and the burden of showing prejudice rests on that party." *Crane v. Crest Tankers, Inc.*, 47 F.3d 292, 296 (8th Cir. 1995).

The jury found in a special interrogatory that the claim was a "total loss" and awarded Southern Pine $297,000. Phoenix argues that Southern Pine's contentions with respect to the meaning of the lienholder endorsement unfairly prejudiced the determination of damages, because the jury might have believed that Phoenix would have to pay the bank $297,000 in any event, regardless of the amount of loss or the loss that would be covered but for the exclusion.

Having reviewed the record, we are unable to conclude that any significant prejudice resulted from the admission of the evidence relevant to the lienholder endorsement. There was more than ample evidence that the helicopter was a total loss at the time of trial; indeed, the parties agreed that it was. The only dispute concerned the cause of the admitted loss. Southern Pine contended that the helicopter became a total loss because of damage that occurred during the fire and the

-7-

transportation of the helicopter for inspection afterward (this latter was also covered under the policy), whereas Phoenix contended that part of the loss resulted from causes not covered. In our view, the jury would have found that the fire and transport damages were the cause of the total loss, justifying its award of $297,000, without the matter of the lienholder endorsement ever having been raised. We thus conclude that Phoenix's substantial rights were not affected.

## III.

We turn now to Southern Pine's cross-appeal from the dismissal of its bad-faith claim. In response to Phoenix's motion for summary judgment, Southern Pine produced evidence of its disagreement with Phoenix over the extent of the damage to the helicopter and what caused it, which led to a delay in settling the matter. Phoenix's first estimate of damages occurred a few weeks after the fire, and, as time went on and the two sides continued to disagree on an amount, Phoenix offered less and less money (it reduced its offer from $115,000 to $75,000 to $51,000). Mr. Geil admitted that his letter adverted to above was a "threat" in a sense, because he was annoyed with Southern Pine's refusal to "listen to reason" and accept Phoenix's earlier settlement offers.

We agree with the district court that summary judgment was appropriate in this situation under the principles announced in *Baker v. Safeco Ins. Co. of Am.*, 175 F.3d 618, 619-20 (8th Cir. 1999), and *State Auto Property & Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 58, 991 S.W.2d 555, 560-61 (1999). Arkansas law considers an insurance company's actions to constitute bad faith only if they are "dishonest, malicious, or oppressive." *Aetna Casualty & Surety Co. v. Broadway Arms Corp.*, 281 Ark. 128, 133, 664 S.W.2d 463, 465 (1984). *State Auto* explained:

> Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage; aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's

wrecked car; and where a carrier intentionally altered insurance records to avoid a bad risk.

338 Ark. at 58, 991 S.W.2d at 561 (citations omitted). In each of these instances, the insurance company's state of mind was "characterized by hatred, ill will, or a spirit of revenge." *See id.*, 338 Ark. at 59, 991 S.W.2d at 561.

While we acknowledge that Phoenix may have "dragged its feet in paying claims and disputed other claims," this "does not constitute substantial evidence of bad faith." *Id.* Furthermore, we believe that Mr. Geil's "threat" in the August 9 letter was neither malicious nor dishonest as relevant Arkansas cases use those terms. As we have already indicated, we have significant reservations about whether the helicopter was operated in compliance with applicable FAA regulations, and thus Phoenix's reliance on a policy exclusion in these circumstances cannot be described as unreasonable, much less as manifesting bad faith. We conclude, as a matter of law, that Phoenix did not exhibit the kind of "hatred, ill will, or ... spirit of revenge" that Arkansas law requires as a predicate for a recovery for bad faith. We therefore affirm the grant of summary judgment against Southern Pine on its bad-faith claim.

IV.

We affirm the judgment of the district court for the reasons given.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.